Good morning ladies and gentlemen. Our first case for this morning is Riley against Calloway. Mr. Raina. Good morning, Your Honors. Brian Raina for Spencer Riley. May it please the Court. Your Honors, this is a State Appellate Court unreasonably applied to collateral estoppel analysis set forth by the Supreme Court in Ash v. Swenson, a case the Appellate Court failed to even cite. The rule from Ash is straightforward. The State may not re-litigate an issue that has necessarily been resolved by one trier of fact in front of another trier of fact and hope for a different result. That's exactly what happened here. The State presented three eyewitnesses to a jury in an attempt to prove that Spencer Riley was the person who personally discharged the gun that caused Cedric Hudson's death. The jury received an identification instruction and both parties argued that the only issue was the credibility of the eyewitness identification testimony. So this is one of those situations though where it depends what's found because if the jury had answered a special interrogatory to the effect that he never even possessed the gun then logically he couldn't have discharged it either. But what the jury finds instead is that during the commission of the offense he discharges it but it's possible to possess without, you know, even it's possible that you might or might not have discharged it and you possess it all along. So at this point it's the possession that Well your honor the only question for the jury was whether Riley was the person that possessed and discharged the gun. Well they say discharge the question as I remember says discharge. Yes the special verdict was about discharge. But the subsequent prosecution at the armed habitual criminal trial was not about possession of some gun it was about possession of the same gun used by the murderer at the time of the shooting. No I understand that but what I'm saying is I, the prosecution the jury says has not proven, not proven, that during the commission of the offense he personally discharged the firearm. If that same jury had been asked but was he nevertheless holding a firearm it might consistently have said yes. Because you can hold a firearm that you don't discharge. Well your honor I would argue that that analysis is not consistent with Ash that advises to look at the evidence in a practical framework to determine what the jury rationally decided. What we know here just as in Ash is that there was no issue of intent or whether there was a murder occurred so we know whoever possessed that gun shot the victim. There can be no possession separate from discharge in this case. Particularly where at the second trial all the evidence was again that Spencer Riley approached the decedent and shot him. Well I mean the district judge here sees a couple of possibilities where the two are consistent and certainly for collateral estoppel it really does have to be the identical issue. And I'm going to comment just parenthetically it really doesn't matter whether the state court cited Ash or not. I mean we are obviously not grading their opinions. Right it does have to be the identical issue and the issue here is the identification of the person who approached the decedent and shot him. And shot him and so you know again if it's possible to have possessed maybe there was another gun or maybe somebody else shot there are just other possibilities out there. Well your honor the trial judge at the Arms of Mitchell criminal trial could not have found that Spencer Riley was the person that possessed that gun based on the evidence without necessarily finding he discharged it. Why is that? Because that's all of the evidence both of the identification witnesses at the Arms of Mitchell criminal trial testified just as they did at the first trial that Spencer Riley approached and shot the victim and this is actually the closing arguments at the Arms of Mitchell criminal trial by the prosecutor. And Frederick Brown sees Spencer Riley shoot Cedric Hudson also known as Gelo. He's 20 feet away there's street lights in the alley. Semiotic weapon. Allen pulled out a semiotic weapon and testified he pulled out a semiotic weapon and shot Hudson. So the issue of whether he was the shooter was exactly what was being litigated again at the Arms of Mitchell criminal trial. And the fact that the appellate court didn't cite Ash I understand they're not being graded but it does I think evidence a they didn't pay a whole lot of attention necessarily to the controlling Supreme Court case that dictates the type of analysis that they're supposed to apply. Well okay I'm just looking at the district court's opinion this is page 1920 and that's where she's really coming to the ultimate conclusion that the necessarily decided facts or that Hudson is murdered and Riley did not do it. And then she notes that defense counsel itself offers other reasons for reasonable doubt. No physical evidence, more than one gun, head is the actual murderer, inconsistency and on and on. I mean I'm sure you know this is part of the opinion and it just seems to me that is something we need to grapple with on habeas review. Your Honor if the  they rejected the identification testimony. In Ash the court found basically the same thing that there was a robbery and that the defendant was not the person involved. And that was enough to preclude retrying the issue of his identity as a robber. Well it's great because in Ash they think that it was established in the first case he's not even there, he's not the robber. And so person number one, person number two, person number three and so forth you can't just keep retrying the same thing when the fundamental issue has been decided. But that's what I'm having trouble seeing other than the two issues the district court identifies. Well the fundamental issue here is the identity of this person. The identity of the only person. The identity of the shooter. And possessor of the gun that Mr. Riley was convicted of having possessed at the time of the shooting. Okay. If there are no further questions Your Honor I would save my time for rebuttal. Certainly that's fine. Thank you. Mr. McLeish. Good morning Your Honors. May it please the court, counsel and assistant attorney general Brian McLeish on behalf of the respondent. And the first and most important point perhaps is that Ash and this court's precedent in Thiefault say the parties may not relitigate an ultimate issue in the second trial. And an ultimate issue is an issue or a fact that must be found beyond a reasonable doubt at the second trial. And the only fact that had to be found beyond a reasonable doubt at the second trial was whether he possessed a gun. Not whether he discharged it. Not whether his discharge actually killed the victim. Are you sure that's the Illinois law of issue preclusion though? The Supreme Court has frowned on the distinction between subsidiary facts and ultimate facts. They say facts are facts. And if a particular fact, if you know for example from a special interrogatory answered by a jury that a fact has been found, the modern law of issue preclusion suggests that you regard that as resolved between the parties. Correct Your Honor. It doesn't have to be an ultimate fact in the first trial. It does have to be an ultimate fact in the second trial. Why? Because otherwise, because as Petitioner is arguing, he wants to preclude the fact that Petitioner was the murderer. And that is not the issue in the second trial. The reason the State presented the evidence in the second trial of what Petitioner did with the gun is because it would have been bizarre for the State to present these witnesses to come up and say, I saw Petitioner. He had a gun. The end. But the second trial is all about that. Correct. Yes, but there is some context needed. And the State certainly is allowed to present the context of how he possessed the gun. And this Court... So does the State ever try to reconcile that special interrogatory by the jury that he didn't discharge the weapon? Do they ever try to find another gun? It's not that he didn't discharge the weapon. It's that he didn't discharge the weapon in the commission of a murder. But the guy was murdered. The guy was murdered and someone did it. But defense counsel's first point in closing argument was, there might have been two guns on this scene. He cited the police officer's testimony for that. And not just the police officer's testimony, but we have the physical evidence. One of them has an aluminum jacket, is that right? Correct. And if you look at the physical evidence combined with Allen's transcribed statement. So Allen says the first shot, the victim is turning around. The shooter was behind him. The victim was turning around and shot. And Allen thought he got shot in the face. And there's only one bullet found anywhere near the face and that is the aluminum jacket bullet found in his shoulder, which was not a fatal shot. Head and Brown didn't... Head saw one shot. Brown saw zero shots. They both ran. Allen said he saw that shot and then he turned to run and he actually saw Petitioner shoot two more times, but not at the victim. He said these shots went past my face. So he was still shooting up. And then he ran. No one saw Petitioner or anyone else fire any more shots at the victim. So then the victim went face first onto the ground and the remaining, the copper jacket bullets, were all found rear entry through the back and those were the fatal shots. So we have no evidence that some mysterious person came up after all these other people ran away? Defense counsel did not present any alternative suspect except for potentially Head, but we know this was about... How about the State though? The State had no interest in presenting these alternative experts or potential shooters because the State was trying to prove him guilty of murder. And so the State's argument at the first trial certainly was he was the only shooter. And defense counsel's argument is you can't be sure of that because of this physical evidence. And defense counsel didn't argue, but the jury certainly rationally could have concluded based on the eyewitness testimony that everybody only saw one shot at the victim. They ran. Then we have these other bullets. So your theory of this is it all holds together because the jury's finding is just that he doesn't fire the fatal shot. That is one theory. But then he does have a gun, which leads to the armed career criminal. That is one possibility that the jury could have acquitted on that would have led to reasonable doubt in the first trial without finding that he didn't have a gun. The district courts note some more. The State appellate court notes a few more that overlap with the district courts. And just the possibility of two guns is enough for the jury to find reasonable doubt. And there certainly was evidence... There was enough for the jury to have a reasonable doubt about the possibility of two guns. And so, yeah. So that's the only fact that the second jury had to find. And the first jury didn't find the contrary. And therefore, collateral estoppel does not include the second jury. The district judge says to determine whether the defendant possessed a weapon to sustain a conviction for being an HAHC, the Trier fact would not need to determine whether the defendant discharged a weapon or if he killed Hudson. Correct. Yes. So perhaps the defendant discharged a weapon and didn't kill him. Perhaps the defendant had a gun and the jury credited the eyewitnesses that the petitioner had a gun but didn't discharge it. Either of those are possible. Either of those are enough for reasonable doubt. And he still then... But he would still be an armed habitual criminal if he had the gun, period. Correct, Your Honor. So unless this court has further questions, we ask that this court affirm the judgment of the district court. All right. Thank you very much. Anything further, Mr. Rana? Just briefly, Your Honor. Ash does not ask us to guess what the jury thought happened that night. The only issue that was in front of the jury was the identity of that person. Spencer Rana has been in prison for about a decade. The identity of the killer, right? Of the possessor of the murder weapon. The identity of that person. My client has been in prison for a decade because a judge disagreed with the jury about whether he was that person. It would have been irrational for the jury to acquit based on intent. Another issue. Intent or a lack of a corpus delecti. We know that. The only issue was identity. Was Spencer Riley this person that possessed and shot the gun? The jury said no. Armed habitual criminal judge disagreed and said yes. Even made a comment saying that he thought Spencer discharged the gun that night. Your Honor, I would ask that you reverse the district court's decision. All right. Thank you very much. We will take the case under advisement.